The next case for argument is Heffernan v. City of Patterson. I'm going to start with the procedural history of this case. We, of course, have read the briefs, except to the extent that my colleagues won't ask specific questions about the procedural history. There really isn't a need for you to spend a lot of your valuable time on it. But I would like to start out by asking you what is essentially a procedural history question. And that is, did anyone ask the district court to recuse or was this a sous-sponte recusal? The reason I'm going to get into some of the procedural history is it's going to lead into some other matters that happen in this trial, in this whole case, which is somewhat different than normal cases. This is somewhat different. I was a trial judge for 18 years on two courts, and I ain't ever seen anything like this before. And just to explain the sous-sponte, it was a companion case. We were actually on the companion case, and then the judge announced that he forgot to disclose to counsel that his former firm had settled a civil rights case with the City of Patterson a number of years earlier, but he was on the bench and had nothing to do with it. And I didn't see a basis for recusal, but ultimately he recused himself, and he granted a new trial. Now, he granted a new trial based on the recusal, but the order was based on the language trial notions, which he would have said based on the notion of Heffernan. So that's how it came about, and that's how he got the cabinet. But I want to get some procedural history before we ever get to that. Why were you seeking a new trial? Well, I'm not going to just answer that. There was a $75,000 verdict against defendant Wigg, who was the former chief of police, former mayor, then mayor, and at the time a chief. $375,000 a piece, $15,000 a piece on punitives. The city was not found liable. We were seeking a new trial, but we thought the trial notions, because he didn't allow our economists to testify as to Heffernan not being promoted to sergeant, and that was the bulk of the damages in the case. So recusal aside, if a judge grants a new trial, it's not uncommon to then ask his or her colleague to retry the case, and that colleague then may want to first revisit some motion that was previously part of the case. With respect to that, sir, the following. If, in fact, you're going to revisit the case and review the motions in the case, then all the motions should be reviewed. In this case, essentially what Judge Kavanaugh did was initially said, we're just going to retry the case, and he set it down for trial in September after the recusal. Which was tried initially as a free association case. That was tried as an association case. However, in the decision by Judge Sheridan, the original trial judge, there was two motions that were pending, and they were cross motions without the opportunity to file a responsive motion. At the second pre-trial conference in January of 2008, it was determined that we wanted to find as a matter of law, just a determination just on that issue, that the plaintiff had engaged in free speech. The defendants wanted to file a motion for somber judgment. So the judge said, okay, each of you file those respective motions along with the motions in limited. And that's why ours came under our motions in limited. Because it wasn't a motion for somber judgment. But the district judge, prior to trial, framed this, going into trial, as only a free association. Only an association. That is correct, sir. So trial began in April 5th or 6th, maybe it was 7th. But in any event, the Friday before the trial, he issued an opinion in saying, basically, I see this as a free association case. During the course of the trial, he said that the pre-trial order set this up. It's no surprise to anyone that this is a free association case. You can amend your claims under, you didn't use 15B, but clearly you had the right to do that. And it went forward as an association case. You never did. Amending? Yeah. You never did because you felt that the complaint was sufficiently flagged in the pre-trial order and the issues framed clearly. How was the jury instructed? Pardon? How was the jury instructed? All the jury instructions went in accordance with the freedom of association. Okay. But doesn't, doesn't Jeff Sheridan's recusal, and in fact his grant of a new trial, because you didn't like the outcome, okay, It's remarkable. The watch will be wished for sometimes. That's true. But didn't, in effect, those two acts wipe out everything that took place? No, Judge, because And leave the space, let me finish that, and leave the case, basically, with what's on the record, which would be the pleadings and the pre-trial order. Isn't that what Judge Kavanaugh ended up getting? He did, Judge. But at that point in time, you have a new record, and even if you segregate the trial, and you go back to What do you mean, segregate? If you forget about the trial, you bifurcate it, you divide it, you nullify it. Because that's what I was suggesting, is that his recusal nullified all that took place. Well, it won't say nullify anything that took place. You still have the cross-motions, and a motion for summary judgment, which clearly, I would have had the opportunity to respond to in void of motion practice. I've never had that opportunity. Okay, wait, wait, wait a minute. You filed a motion for a new trial. Did you file a motion for a new trial, or only a new trial as to damages? No, there was one motion. We excluded violence. I was filing a motion for a new trial on damages. There was one post-trial motion dealing with the exclusion of evidence in the case. That went to not just damages, but also the liabilities? Yes, sir. So you invited the whole thing. There's no question that I invited a new trial. If you had asked for a new trial simply on damages, this would be a completely different story, as far as you're concerned, and not an unsatisfactory result, right? That is correct, sir. I can see that. So you invited the whole new trial. I invited a whole new trial in this manner. However, what I did not invite is the fact that the original letter from the court in April of 2010 was that we're going to go back. Judge Shirley is the law of the case, and therefore we're going to try the case as it is with all the existing pleadings. Thereafter, Judge Kavanaugh changes his mind and says, OK, I will re-decide the issues. But in my letter to May 7th, to the judge, I said, if you're going to do that, judge, then clearly I want you to re-decide the motions in limitee. And I want to be able to add and respond to the motion for some adjustment. We have a whole new letter. Even if we don't take the trial, Judge Fisher. And you exclude that. There was clearly sufficient facts with respect to not only the association claim, but we felt literally a speech claim. And the facts were very clear. And the case was just so different than what Judge Kavanaugh issued in his opinion. I think Judge Fisher's point is, in part, why didn't you ask for leave to amend so that there would be no question that what you were now pursuing was a freedom of association claim? You had every basis now for asking for leave to amend. The other side was on notice of this claim. They had a whole trial about this claim. But you chose not to. I didn't choose not to, Judge. I was denied the opportunity. If you read the letter and you look at this quip that is coming up, I was not allowed to supplement anything or do anything. And that is one of the main bases of the appeal. If you look at the order and you look at the letter, you will not allow anything. And we wanted to supplement. We wanted to do all those things because of everything that transpired. So I'm prevented from doing that. I'm not only prevented from doing that, I'm prevented from even filing a responsive brief, which is clearly contrary to Rule 56. And so therefore, I had no opportunity to do those things. And that was one of the main bases of my brief. Where is that letter? Yes. In the brief. Let me get it for you, Judge. There are two things here, Judge. There is the original letter dated April 26, that is, from the appendix 159. And then he issued an order that everything would be refiled. And with respect to everything being refiled, it would be exactly as it is, with no supplements. So essentially what he did was the following. Initially, we filed the brief. The first letter you referred to is the one that said we're going to trial and everything is as it is. I'm talking about where is this letter or order that you say prevented you from amending it? That would be at page 166 in the appendix. And if you read it, it's May 12, 2010. It says the court will not, however, permit the parties any additional briefing on the matter, but will modify the existing briefs. Moreover, there will be no amendments to the existing pretrial order. He says there that it appears that all parties agree that the summary judgment motion should be addressed by this court. Do you know what he was referring to there? There were discussions concerning the rehearing of the motion for summary judgment, as well as my motion to express a matter of law that there was protected speech. In my letter to the court, when we had those discussions with counsel, my May 7th letter to the court specifically states that, Judge, for him to do that, I'm going to do X, Y, and Z. And that is I'm going to have supplemental briefs, replacement briefs, additional testimony, to be able to supplement everything you did, and obviously include an area with respect to the association claim going forward. In the summary judgment motions, both sides moved for summary judgment, right? No, no. No. Defendants moved for summary judgment. We never moved for summary judgment. All we wanted, and we had a few thousand out of the law under a speech claim, that certain factors, obviously, were questions for the juror, for the court to determine. I don't think you wanted the court to determine as a matter of law. You're saying you captured it as a motion to eliminate or something like that. We captured that. It was in our motions to eliminate it, because I had already expired permissions for summary judgment. I mean, this was like an afterthought on Chess Sherman's... Well, what was it that you would have said in your response to the summary judgment motion that you didn't say in your motions? Okay. I would run into, on the speech claim, many more facts than we had utilized. One of the things that happened in this case was that late in the case, we obtained cell records of what transpired, what happened, and when to pick up the sign. And one of the cell records coincided with the chief having a telephone conference or telephone conversation with an officer by Arsenio Sanchez. Let me just give you briefly those facts. How many of those had picked up this sign? At the place he picked up the sign, there was a lot of campaign activity. Signs were being made. People were picking them up. When he picked up the sign, the council person, a guy named Gao, who was on city council, was the chairman of Spagnuolo's campaign. It was a very hotly contested campaign. Spagnuolo was the former chief. Torres was the existing mayor. They didn't like each other. When he picked up the campaign sign, Gao, this is testimony. That was part of a brief. We saw Sanchez. He was going to report this and literally get targeted in the job. What we obtained later in the case, and I could not read the post-it because it was going to be preserved, but the cell records. It was a late order. We got it. At the time that he picked up the sign, the cell records coincided with Sanchez and chief speaking. The very next minute, Mays, who was in the office, was in conversation with my client, saying all hell is breaking loose. What are you doing? You should be there. All of these are factual allegations. What did they do for you? What did they get you? Why are you arguing right now? I'm sorry, sir. These are all factual allegations. This is factual matter. What does it relate to? How does it help you? It relates to, basically, that Judge Kavanaugh found on the phone that since he didn't go to the washing, that the picking up the sign was a passive act, and therefore there was no action. By his own testimony, he said he wasn't exercising his free speech rights, didn't he? No, not at all, Judge. He says, I went to pick up the sign. In the room there, when he went to pick up the sign, that this was a haphazard action. That was Judge Sharon's position in saying to Foley, wasn't it? It was Judge Kavanaugh. Judge Kavanaugh's position. That was his position. Clearly, in his opinion, he said that defending the plaintiff didn't respond. How can we respond when we have an opportunity to respond to that motion? All right. We'll have you back on rebuttal, Mr. Frosky. We'll pass your time. Mr. Affanado. Good morning. May it please the Court, my name is Victor Affanado. We're from the Law Firm of Life at Palmer Greenberg. On behalf of all the attorneys in this particular matter, there's a joint submission on the argument in behalf of all the attorneys. The District Court properly dismissed the entirety of the plaintiff's complaint for the following three reasons. First, the District Court properly determined that there was no speech in this particular matter. Before we get to that, I must admit that in my own limited experience, I've never seen a situation where a court denied a party to put in responsive papers, answering papers to a summary judgment motion, which was done here not once but twice, if I understand the situation. First by Judge Sheridan and then by Judge Capito. Am I missing something? Your Honor, you've addressed the issue with respect to the oppositions, but it was agreed upon by all the parties on two occasions. Before Judge Sheridan, we would have simultaneous submissions. Everyone had an opportunity to file in one set of papers. Motions in the domain were separate. Motions for summary judgment because the defendants had requested it. Mr. Frost's submissions were, as he captioned it and he admitted today, a motion in limine. He wanted that issue of free speech crystallized. That's the only issue he addressed. Admittedly, in his papers, in his document that's captioned as a motion in limine, he leaves in two paragraphs of a claim on freedom of association. But never before does the specter of a freedom of association claim ever appear. To address the issue of free speech. I haven't all got it. That specter had gone through an entire trial. It seemed to have a substance that at least convinced a civil jury to award damages. How can we now pretend that didn't happen? And a judge to give an instruction on it. It never should have, frankly, Your Honor. But to answer your first question with Judge Kavanaugh not allowing oppositions. He allowed the same mechanism that Judge Sheridan had indicated to the parties. One set of papers. All parties agreed. The letters, as we just pointed out, were a lot of rain in the appendix. Where all parties agreed. We would come back to the point in time that the pretrial order was entered and that legal issues were going to be teed up and addressed to work and get ready for a trial. For the proper administration of a trial. Are you saying that there was an agreement not to be allowed to answer your summary judgment motion? So that the point is waived. Where are you saying that in your view it was harmless error? Your Honor, I would agree that the court had proper discretion. I wouldn't say that there was error in any way. But just so that my statement is clear. The parties did not agree. No one is going to file oppositions. But we agreed that Judge Kavanaugh would take the case at that point in time. There were requests made by Mr. Frost, as he indicated. And the court, through its discretion, under Rule 7-1b and eventually Rule 78, properly exercised his discretion in the local and federal civil rules procedure to determine those particular issues and move forward. Okay. The plaintiff, by his own admissions, failed to ripen or perfect a freedom of speech cause of action. As the court had indicated on page 9 of Judge Kavanaugh's, or actually in the panfix, page 9, Judge Kavanaugh cites to deposition testimony. Where Mr. Heffernan says, If Judge Kavanaugh had given the plaintiff the right to put in an answer to your summary judgment motion, it seems inevitable that at that point, given the whole trial and everything, he would, in his answer, have said, and in any event, we think there is now a basis for a freedom of information claim for the following 19 reasons. But he was never given that opportunity. Your Honor, in response, it would be too little, too late, even at that stage. And why? It goes directly to my second point. There is no freedom of association claim in this case. As this court knows well, there are two milestones to any federal civil litigation. The complaint, where you place the defendant and the world on notice of all your claims and all your factual theories you intend to prove. And then, the culmination. The sanctity. The document. The pretrial order. Which carves out the ironclad vertical of, many think, the sanctity sense of this trial. I don't think these are your pretrial orders. And, Your Honor, why I'm using that phrase, and what a strong phrase, why? Because any trial attorney knows that if it's not in the pretrial order, it's not an issue. Any federal judge knows it's a trial case. If it's not there, I'm sorry, counsel, it's not in the case. And if we look at Petrie, if we look at Carver, if we look at all those cases that talk about the sanctity of the pretrial order, it's important. All those issues need to be in the case. But what is that? What's the point? What's the point? Why does that have any weight? When you're going to get a new trial, but now you are on notice because you've had a whole trial. But what the claim is? But, Your Honor, the case came back at the point in time that the pretrial order was entered. Just as Judge Fisher had indicated, the prior proceeding was wiped out. Okay, but even though it was wiped out, don't take too much from what I said, even though it was wiped out, you still had a pretrial order. I did, Your Honor. The pretrial order, points four and five, point four says whether the plaintiff was demoted in direct retaliation for his exercise of protected activities. Five says whether the plaintiff was denied promotion in direct retaliation for the exercise of protected activities. Now, protected activities means protected activities under the First Amendment. And under the First Amendment, there are a number of activities that are protected. One is speech, one is association. Your Honor, in response to that, the First Amendment also has freedom of religion. I understand that, but press. There was no allegation here to test on religion. There was no allegation here to test on press. But all of the court's jurisprudence on these political retaliation cases, starting with Elrod and others, is that it's a freedom of association claim. Your Honor, it's a distinct cause of action for the freedom of speech claim. It is, but his claim was a First Amendment retaliation claim. And that's what the complaint talked about. And the pre-trial order not only talks about speech, but it talks about protected activities. But throughout the pre-trial order, if you look at even the legal issues that are presented by the plaintiff, he mentions speech on two occasions right there. I want to come back to the assumption that everything is wiped out. Because, for example, if there had been a second trial and a witness had testified differently from how that witness testified at the first trial, you're not saying, are you, that that witness couldn't be impeached by his testimony at the first trial, are you? Not at all. So all that was wiped out was the determination of the jury. The fact that you were now on notice, unbelievably clear notice, of a freedom of association claim wasn't wiped out. Your Honor, to allow that result, to allow a freedom of association claim to enter this case at this stage, when there was no amendment to the pre-trial order, no clear application at any point or motion to amend the pre-trial order, and then rely upon this trial proceeding to try and sneak in through the back door where it wasn't specifically fled and put on notice, to also prejudice the defendants, because the defendants never have an opportunity to probe a freedom of association claim. The next question from the public probably will be, well, what would you do differently? And I'll answer that. What we would do differently is we would probe his affiliation with Lorne Stagnola, his family's affiliation. What did he do to perfect a support of Mr. Stagnola? What had he done in the past? How involved was he in other elections? Who did he interact with? What did you ask for that discovery when Judge Sherman said it was going to go forward on freedom of information? Yes, Your Honor, it was an application for a containment that was denied at that point in time. And we launched the trial. And did you make that same application to Judge Kavanaugh? No, because the case came back in time right before the idea of a freedom of association, cause of action, whatever people ought to try, because the four corners of the pretrial order were quite clear. They said this was a speech case. And despite Judge Fisher's concern with the phrase protected activity, frankly, that's not enough. And the reason it's not enough is if we look at a lot of our Third Circuit cases, including some district court cases, LaPosta most recently, that case turned on the distinction between speech and association. And this court said that you can't lump them all together. And that, unfortunately, was what was going on prior to being launched at trial. There were two separate claims with two separate causes of action, two separate sets of elements, two different sets of discovery. And despite the fact that there's a belief that we were placed on notice, we were not. And, quite frankly, Judge Kavanaugh properly determined that. Well, how can you say we're not placed on notice? You had a freedom of association claim that was discussed with Judge Sheridan, who instructed the jury with the jury file. How can you say we're not on notice? Not on notice to conduct a trial. Not on notice to properly defend the interests of the Japanese in this particular matter at trial. Well, it sounds to me you're going back and trying to reword the word that before Judge Sheridan. No, Your Honor, as we've agreed at the outset of this case, you can't say we're not on notice. We've had our arguments out in public. You certainly can't say we're not on notice. Your Honor, this case is a speech case. It's always been a speech case. It was a retaliation case. It's a First Amendment speech retaliation case, Your Honor. And it's always been that. And despite the fact of retaliation, once again, if you look at Lamarty, if you look at those lines of cases, they're two separate theories of liability or causes of action. And this was always a speech case. Judge Kavanaugh, when he reviewed the motion papers that were presented before him, he made the proper determination that speech did not exist by the admissions of the plaintiffs in this case. And then when he looked at what was left, there was nothing left. There was no association properly, but in the complaint, it wasn't ripened in the pretrial order, and he did not conduct any improper discretion in making the determination that all remaining causes of action and issues within Mr. Heffernan's moving papers couched as a motion amendment were removed because there was nothing else left in the case. It was always a speech case, and it should only have been tried as a speech case. Unless the committee has any specific questions. Thank you for your time. Thank you. Mr. Frosch, rebuttal. Let me just address a couple of issues quickly. With respect to Judge Kavanaugh and Judge Fischer's comments concerning the actual being on the notice of association, Judge Sheridan at trial states, and it's at page 271 in the appendix. In this case, we don't have that either. We have a case where we discovered a substantial number of people were deposed. There was a final pretrial order. The final pretrial order set up the issues with regard to association and speech. It was always a First Amendment retaliation case. All the discovery I submitted to the court was exactly the same. That means there would be no difference. We had deposed 13, 14 different individuals concerning what transpired. Also, with respect to the Bush trial motions, and what took place, clearly the order with respect to vacating that this was a right of association case was never vacated. That was still the law of the case in the sense that that order was never vacated. That was still existing. In our brief, we raised the right of association. Judge Kavanaugh does not even address it in his decision. Clearly, Judge Sheridan addressed it, and it was his opinion that it was more of an association case than a speech case. Notwithstanding that, it is still our position in this case that there were sufficient facts and discovery that give rise to a freedom of speech claim. The fact of picking up a sign, which is an overt act, which is much different than filtering. You're picking up a sign. It's a Spagnola sign. You're there with members of the Spagnola campaign committee. A police officer calls the chief of police and says, he's engaged in picking up this sign, and the chief of police, Whittock, says, there's a reason we transferred a punishment sign, a walking FD, and took him out of his detective status, was because he was overly involved in the political case involving political election, that he says. He was overly involved by picking up the sign. So it wasn't any mistaken belief as in overtly. It was a real belief based on him picking up the sign. Now, the deputy chief says to him, no, you should never have done that. You should have never picked up the sign. You should have known better. So he was transferred the punishment sign. But for us, isn't involvement different than speech? When you have Hatch Acts, the federal or state equivalents of Hatch Acts that say, you can't be involved in political activities, period, to hold a particular job. I mean, that's different than speech. Well, thanks, Judge, because with respect to the city of Patterson and its police officers, that you are allowed to engage in political activity if you are off duty. And also, you get into the decision-making aspects of it, that when you have a patrol officer who's only a detective because he works with the chief's office. That goes to the merits of the motion and maybe outside the scope of the First Amendment. That's the argument I'm trying to make. Well, I just would make the point that, as I understand it, Judge, is that we have to prove those things in a speech case. One is that it's protected. Second, whether or not the criminal interest outweighs the individual's interest. And if you can't get past protected, you're done. You're not fully protected. But picking up a sign is protected speech. That is the speech that is the law. In a number of cases, a Stanford proposition that a campaign sign was actual speech. And with respect to picking up that sign, he did that. And not only did that, but the fact is that he was with all these other individuals. And it was for that reason alone, which is much different than photography, is the fact that he was denoted and transferred to a punishment assignment. So we have a specific fact, a specific act, that gives rise to speech action. And Judge Kavanaugh, I'm arguing, completely missed the boat on that. All right, Mr. Foster. Well past your allotted time. Thank you very much. Thank you both as counsel. I would, however, ask to seek counsel here at the bench for just a moment, please.